IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CENTURYTEL OF FAIRWATER-BRANDON-ALTO, LLC;
CENTURYTEL OF FORESTVILLE, LLC;
CENTURYTEL OF LARSEN-READFIELD, LLC;    OPINION AND ORDER
CENTURYTEL OF MONROE COUNTY, LLC;
CENTURYTEL OF NORTHERN WISCONSIN, LLC;    08-cv-470-slc
CENTURYTEL OF SOUTHERN WISCONSIN, LLC;
CENTURYTEL OF MIDWEST WISCONSIN, LLC;
CENTURYTEL OF WISCONSIN, LLC,

                        Plaintiffs,
   v.

CHARTER FIBERLINK, LLC,

                        Defendant.

---

Plaintiffs are eight separate CenturyTel LLCs located throughout Wisconsin brought this suit against defendant Charter Fiberlink, LLC, in the Circuit Court of La Crosse County, Wisconsin asserting claims of unjust enrichment and conversion. On August 11, 2008, defendant filed a timely notice of removal pursuant to 28 U.S.C. §§ 1441 and 1446 on the basis of federal question, 28 U.S.C. § 1331, and diversity jurisdiction, 28 U.S.C. § 1332. Now before this court is plaintiffs' motion to remand to state court and request for costs and expenses. For the reasons stated below, I am granting plaintiffs' motion and awarding costs.

Plaintiffs contend that their claims do not arise under federal law and that diversity jurisdiction does not exist. Defendant has abandoned its claim of diversity jurisdiction, *see* dkt. 9 at 1 n.1, but argues that federal question jurisdiction is present because plaintiffs' state law claims require a determination of the rights and obligations of local-exchange carriers–also known as telephone companies–under the Telecommunications Act of 1996, 27 U.S.C. § 251, and the Federal Communications Commission's implementing regulations. In particular,

defendant asserts that whether it is liable for conversion or unjust enrichment depends on whether it used plaintiffs' property "unlawfully" under the Telecommunications Act of 1996.

Because defendant has failed to establish that the federal issue in plaintiffs' state law claims is a pure question of law that will be dispositive on the case and necessarily requires a federal forum, I am granting plaintiffs' motion for remand. Because defendant's basis for removal is foreclosed by clearly established law, I am granting plaintiffs' request for cost and expenses for improper removal.

From the complaint and the documents submitted by the parties in connection with the pending motion, I draw the following facts, solely for the purpose of deciding this motion:

ALLEGATIONS OF FACT

Plaintiffs are eight limited liability companies that provide telephone service to Wisconsin residents. They are incumbent local exchange carriers that own and maintain telephone wires and network elements throughout the state.

Defendant is a telecommunications company that provides local phone service to Wisconsin residents. It is an incumbent local exchange carrier that provides phone service through standard cable outlets in a customer's residence.

In 1996, Congress restructured the nation's telephone and telecommunications market by passing the Telecommunications Act of 1996, 47 U.S.C. § 251. Prior to the act, the nation's telephone service was consolidated in the hands of a small number of companies who owned and maintained most of the telecommunications infrastructure. The main purpose of the act was to promote competition between telephone service providers by providing new carriers with access

to the old carrier's infrastructure. The act required incumbent local exchange carriers–that is, the old telephone companies–to provide both interconnection and access to network elements on an unbundled basis to any requesting competing local exchange carriers, that is, the new phone companies. A new carrier could enter into an agreement to pay the old carrier for use of its network elements, such as telephone wires, switches, signaling systems and network interface devices. Such agreements could be negotiated between the carriers as well as submitted to a state commissions for approval.

A network interface device is one of the network elements to which old carriers were required to provide access when requested. It consists of a unit attached to the exterior of a customer's home or building where the telephone carrier's network connects with the customer's network. It is composed of two components or sides, one internal, the other external. The internal component, also known as the customer's side, allows the customer to hook up his/her telephone to the carrier's network. The external component contains telephone wires that run to the carrier's telephone grid. It is to be accessed by the carrier who owns the lines and wires, unless otherwise provided by agreement.

Defendant was one of the new carriers that sought to enter into the Wisconsin telephone market. Defendant and plaintiffs entered into two interconnection agreements, the Charter Agreement and the Sprint Agreement. The Sprint Agreement was a pre-existing interconnection agreement that defendant chose to adopt. Both agreements detailed how the networks would interconnect and how defendant could use plaintiffs' network infrastructure generally. However, the Charter agreement failed to address specifically whether defendant could use plaintiffs' network interface devices.

Plaintiffs allege that defendant has been impermissibly using its network interface devices to provide telephone service to defendant's customers. According to defendant, this is done by attaching a wire between a standard cable outlet and plaintiffs' network interface device on the internal or customer side of the device. In 2007, the parties submitted their contractual dispute to the American Arbitration Association. Because the interconnection agreement was silent on the issue of the use of network interface devices, the arbitrator found that defendant was not liable for damages under the contract. Plaintiffs brought their conversion and unjust enrichment claims in the Circuit Court of La Crosse County on July 8, 2008.

## OPINION

### I. Remand Standard

The burden of establishing federal jurisdiction is on the party seeking removal. *Tylka v. Gerber Products Co.*, 211 F.3d 445, 448 (7th Cir. 2000). In determining whether removal was proper under 28 U.S.C. § 1441, a district court must construe the removal statute narrowly and resolve any doubts regarding subject matter jurisdiction in favor of remand. *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir.1993); *People of the State of Illinois v. Kerr-McGee Chemical Corp.*, 677 F.2d 571, 576 (7th Cir.1982). In this case, defendant seeks removal from plaintiffs' state court action under federal question jurisdiction. Therefore, Charter must show that plaintiffs' claims arise under federal law, 28 U.S.C. § 1331.

### II. Arising Under Federal Law

Defendant contends that federal jurisdiction is necessary because federal law is a necessary element of plaintiffs' claims. Although plaintiff has brought only state law claims,

defendant argues that plaintiffs' claims require this court to resolve the following issues of federal law:

> 1. Is [defendant] Charter permitted to use the customer side of the [network interface devices] to deliver service without compensating Plaintiffs, or in the language fo the 1996 Act, is [defendant] using the [network interface devices] as an unbundled network element?
>
> 2. If [defendant] Charter is not permitted to use the customer side of the [network interface devices] without compensating Plaintiffs, are Plaintiffs entitled to their claimed exemption from Section 251(c)(3) of the 1996 Act which requires ILECS to provide [network interface devices] as an unbundled network?
>
> 3. Assuming Plaintiffs are entitled to compensation, is the compensation determined under the FCC's TELRIC rule or some other standard? Regardless of the standard employed, what is the appropriate amount of compensation?

Because these issues will be raised and involve essential duties of the Telecommunications Act, defendant suggests that this case falls under the "less frequently encountered, variety of federal 'arising under' jurisdiction" over traditional state law claims found in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 312 (2005).

Defendant argues that the three identified federal issues implicate essential duties of the Telecommunications Act and that whenever a dispute involves an essential duty of the act a federal question is present according to *Verizon v. Global Naps*, 377 F.3d 355 (4th Cir. 2004). However, defendant is stretching the holding in *Global Naps* by suggesting that it confers federal jurisdiction over all claims regarding "essential duties" of the act. The Fourth Circuit found federal question jurisdiction "when there is a claim that a state utility commission has misinterpreted an interconnection agreement provision that implements a duty imposed by the Act." *Id.* at 366. Further, the court explicitly stated that "[w]e are not saying that every dispute

5

about a term in an interconnection agreement belongs in federal court, but when the contractual dispute (like the one here) involves one of the 1996 Act's essential duties, there is a federal question." *Id.* In this case, plaintiffs do not bring claims that challenge a state utility commission ruling on an interconnection agreement. Also, the dispute is not over terms in a contract but about matters not addressed in the contract. Therefore, *Global Naps* is neither analogous nor persuasive on the issue whether plaintiffs' claims necessarily pose a federal question. Morever, there is no provision of 47 U.S.C. § 251 that expressly authorizes federal jurisdiction over "essential duties" of the Telecommunications Act.

Although plaintiffs' claims do not invoke essential duties of the act, defendant contends that federal jurisdiction nonetheless exists because plaintiffs' "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. Let's explore this contention:

Plaintiffs' complaint alleges conversion and unjust enrichment, two quintessential state law claims. To prove conversion under Wisconsin law plaintiffs must show "(1) intentional control or taking of property belonging to [plaintiffs], (2) without the [plaintiffs'] consent, (3) resulting in serious interference with the rights of [plaintiffs] to possess the property." *H.A. Friend & Co. v. Professional Stationery, Inc.* 294, Wis. 2d. 754, 763 (Wis. App. 2006); *see also Bruner v. Heritage Companies*, 225 Wis. 2d 728, 736 (Wis. App. 1999). To prove unjust enrichment plaintiff must show that (1) plaintiffs conferred and defendant realized a benefit; (2) defendant appreciated the benefit; and (3) defendant's failure to pay for the benefit was

inequitable.  *Universal Forest Products Eastern Division, Inc. v. Morris Forrest*, 558 F.Supp. 2d 893, 907 (E.D. Wis. 2008).

The application of federal law to these state law matters is not readily apparent. According to defendant, the Telecommunications Act requires plaintiffs to provide access to the network interface devices without any interconnection agreement, or, in the alternative, requires plaintiffs to apply for an exemption under 47 U.S.C. § 251(f)(1).  Defendant analogizes its federal question argument to the situation encountered in *Grable*, in which the court found federal question jurisdiction in traditional state law claims.  The facts of *Grable* are quite straightforward.  Plaintiff brought a quite title action in state court contesting defendant's record title as invalid.  *Grable*, 545 U.S. at 310-11.  However, to resolve the issue of who had proper title, the court would need to determine whether the notice of seizure sent by the IRS to plaintiff, who was delinquent in his taxes, was proper.  *Id.* at 314-15.  No other factual or legal issues were in dispute except the issue of notice, which was based entirely on federal law.  *Id.* at 315.  The Court held that federal jurisdiction existed because determining whether the IRS had complied with its statutory duties implicated a substantial federal interest properly before a federal court.  *Id.* ("The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court.")

At first blush, *Grable* appeared to open wide the door of "arising under" jurisdiction.  In the following term, however, the Court clarified that *Grable* would apply in a limited number of cases.  *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 US 677, 700 (2006).  In *Empire*, the Court addressed whether the Federal Employees Health Benefits Act of 1959, which "preempt[s] any State or local law . . . which relates to health insurance or plans," *Id.* at 677 (citing 5 U.S.C.

§ 8909(m)(1)), allowed an insurance carrier, which provided benefits in accordance with the act, to bring reimbursement claims in federal court. *Id*. The dispute arose when an individual insured by plaintiff filed a state law tort claim for injuries suffered in an accident. *Id*. at 678. The parties in the tort case settled but plaintiff paid for the insured's medical care before the resolution of the case. *Id.* Plaintiff then filed suit in federal court to recover a portion of the settlement claim. *Id.* The case was dismissed for lack of subject matter jurisdiction and the Supreme Court upheld this decision. In distinguishing *Grable*, the Court found that the federal question in *Grable* was dispositive of the case and presented a pure issue of law. *Id.* at 700. In contrast, the reimbursement claim in *Empire* was "fact-bound and situation specific [and] . . . it is hardly apparent why a proper federal-state balance, . . . would place such a nonstatutory issue under the complete governance of federal law, to be declared in a federal forum." *Id.* at 701.

Therefore, the proper standard for determining whether a state-law claim presents a federal question is whether the embedded federal question in a plaintiff's claim presents a pure question of federal law that will be dispositive on the entire suit. Unlike *Grable*, federal law presents only a small component of plaintiffs' state law claims. Although a finding that the Telecommunications Act authorizes defendant to access plaintiffs' network interface devices would resolve the dispute in defendant's favor, if there were a finding that the act does not authorize defendant's actions, material questions of fact would have to be answered. To prove conversion, plaintiffs would have to show that defendant acted without plaintiffs' consent and interfered with plaintiffs' property rights; to prove unjust enrichment, plaintiffs would have to show that defendant received and appreciated a benefit and that defendant's refusal to pay up was inequitable. These issues present factual questions that are separate from the federal

question regarding the rights and duties of local-exchange carriers under the act. Therefore, federal questions are neither case dispositive nor do they present a pure question of federal law.

In addition, the Telecommunications Act gives states the authority to approve and enforce interconnection agreements, 47 U.S.C. § 251(d) and therefore it envisions that states have an equal interest in regulating these matters. Allowing a party claiming an injury under the act to run to federal court before resolving a matter Congress allowed states to regulate would make the grant of state co-regulation meaningless. Morever, defendant has not demonstrated why a state court could not apply federal law on the sole question of whether defendant had legal authority under the Telecommunications Act. *See Empire Health Assurance*, 547 U.S. at 701. ("The state court in which the personal-injury suit was lodged is competent to apply federal law, to the extent it is relevant . . . "). Nothing in the act expressly preempts some state oversight over telecommunications within its jurisdiction. Finally, there may be a greater state interest in resolving these types of disputes between two local carriers whose general business relationships are governed by state law.

Next, defendant argues that the issue of compensation requires federal question jurisdiction because the Supreme Court held in *At&T Corp. v. Iowa Utility Board*, 525 U.S. 366 (1999) that "the FCC had jurisdiction to mandate . . . pricing for the use of unbundled network elements." First, the question of what standard of compensation to be used is not currently a "disputed" issue and therefore the question is not ripe for adjudication. Second, *Iowa Utility Board* does not stand for the proposition that a dispute regarding the pricing of network elements would warrant "arising under" jurisdiction. Instead, the case dealt with challenges by local exchange carriers and state commissions to the proper scope of the FCC's rulemaking authority

pursuant to 47 U.S.C. § 251. *Id.* at 730. Pricing methodology was only one of the FCC's rules being challenged and it was challenged was on the issue whether the FCC had jurisdiction under the Telecommunications Act to promulgate pricing rules generally, not what the proper pricing rule should be. *Id*. at 733. Finally, if the FCC has set a pricing standard for use of network elements, it is not apparent why a state court could not apply this standard. Therefore, the appropriate standard for compensation does not, standing alone, present a federal question that necessitates removal. Because defendant has failed to show that the federal issues involved in plaintiffs' claims warrant federal jurisdiction, I will grant plaintiffs' motion to remand to state court.

III. Cost and Expenses for Improper Removal

Because I am remanding this cast to state court, I will consider plaintiff's request for costs and expenses pursuant to 28 U.S.C. § 1447(c). Requiring a party to pay for removing a case to federal court is warranted when "the removing party lacked an objectively reasonable basis for seeking removal." *Wisconsin v. Amgen, Inc.*, 516 F.3d 530, 534 (7th Cir. 2008). A party's basis for removal is objectively reasonable if clearly established law did not foreclose defendant's basis for removal. *Lott v. Pfizer, Inc.*, 492 F.3d 789 (7th Cir. 2007).

In this case, the theory of federal jurisdiction raised by defendant is not entirely novel. A number of cases have dealt with the issue of whether federal law or federal standards ensconced in a state tort claim was a sufficient basis for federal jurisdiction. However, no case dealt with a state law claim involving an element of the Telecommunications Act of 1996. The

lack of a case "on point" (as will be the case more often than not) is not sufficient to suggest that the law was not clearly established.

Defendant argues that its basis for removal is not objectively unreasonable because *Grable* presented "the Supreme Court's latest guidance on the parameter of federal question jurisdiction." However, in *Empire Healthchoice Assurance*, 547 U.S. at 699-701, the Court clearly limited the reach of federal jurisdiction in cases where a federal law or standard was embedded in a state law claim. Whether *Grable* or *Empire* is more analogous to the present case is not "objectively" apparent, but defendant's failure to acknowledge the relevance of *Empire* is not objectively reasonable because that case expressly addressed the breadth and reach of *Grable.* Furthermore, defendant overstated the applicability of *Global Naps* and *Iowa Utility Board* in order to bolster its theory of jurisdiction. It is not objectively reasonable to believe that cases that deal with legal challenges to the authority of state commissions and the FCC under 47 U.S.C. § 251 are analogous or controlling on the issue of a suit between private parties. The reasonableness of defendant's tack would be a closer question if defendant had acknowledged the important differences between this case and *Global Naps* and *Iowa Utility Board*, then made a reasoned argument for extending the holdings of those cases to this one. Defendant's approach was more struthious.

This raises a slightly metaphysical question: if existing law clearly disfavored removal but did not completely foreclose it, can a party's subjective approach–that is, its tactical briefing of this issue–put a "not" in front of "objectively reasonable"? In other words, if defendant had available to it an objectively reasonable argument to allow removal, but failed properly to employ or develop that argument, should this court award costs under §1447(c)? I conclude that the

11

answer is yes. Failure properly to develop an argument constitutes waiver. *Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005). The fact that the court can hypothesize a more bona fide–albeit still tenuous–argument in favor of removal should not inure to the removing party's benefit if that party could have made the argument but did not. Therefore, an award of attorney's fees is proper in this case.

## ORDER

IT IS ORDERED that:

1. The motion to remand by plaintiffs CenturyTel of Fairwater-Brandon-Alto, LLC, CenturyTel of Forestville, LLC, CenturyTel of Larsen-Readfield, LLC, CenturyTel of Monroe County, LLC, CenturyTel of Northern Wisconsin, LLC, CenturyTel of Southern Wisconsin, LLC, CenturyTel of Midwest Wisconsin, LLC, and CenturyTel of Wisconsin LLC is GRANTED and this case is REMANDED to the Circuit Court of La Crosse County, Wisconsin.

2. Plaintiffs' request for reimbursement of costs and expenses under 28 U.S.C. § 1447(c) is GRANTED. Not later than December 5, 2008, plaintiffs may submit an itemized list of costs and expenses incurred opposing removal. Not later than December 15, 2008, defendant may respond to the reasonableness of plaintiffs' request.

Entered this 22nd day of November, 2008.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge